# In the United States Court of Federal Claims

**NOT FOR PUBLICATION**

No. 23-1928C
(Filed: June 12, 2024)

| | |
|---|---|
| **JESSE MARTINEZ, JR.**, | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) ) |

*David W. Locascio*, Hogan Lovells LLP, Washington, DC, for plaintiff. With him on the briefs were *Michael A. Basse* and *Alex A. Pena*, Hogan Lovells LLP, Washington, DC. *Esther Leibfarth* and *Rochelle Bobroff*, National Veterans Legal Services Program, Arlington, VA, Of Counsel.

*Stephen J. Smith*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Stephen J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC. *Ellen M. Denum*, Captain, Military Personnel Law, U.S. Army Litigation Division, United States Army, Fort Belvoir, VA, Of Counsel.

**OPINION AND ORDER**

***BONILLA, Judge.***

Jesse Martinez, Jr. served in the United States Army from 2003 through 2012, rising to the rank of Staff Sergeant (E-6). He was involuntarily separated after failing the Army Physical Fitness Test (APFT) on successive occasions. Over a decade after his May 2012 discharge, the Army Board for Correction of Military Records (ABCMR) denied administrative relief. Through this action, Mr. Martinez challenges the basis for his separation, principally arguing that he should have been referred into the Disability Evaluation System (DES) and medically retired. Pending before the Court are the parties' dispositive cross-motions. For the reasons set forth below, plaintiff's

motion for judgment on the administrative record (ECF 10) is DENIED and defendant's cross-motion for judgment on the administrative record (ECF 11) is GRANTED.

## BACKGROUND

Mr. Martinez enlisted in the Army on July 9, 2003, beginning his training at Fort Jackson (Columbia, South Carolina), followed by assignments at Camp Humphreys (Pyeongtaek, South Korea) and Fort Carson (Colorado Springs, Colorado). For the first seven years of his military career, Mr. Martinez was considered a model soldier, particularly for his commitment to physical fitness. In fact, between 2007 and 2010, Mr. Martinez was consistently rated "success[ful]" to "excellen[t]" and "fully capable" to "among the best" by his senior raters in their annual performance evaluations. *See, e.g.*, AR 80, 83, 86, 89.[1] During his near decade of military service, Mr. Martinez was awarded a series of medals and ribbons, including: the Army Achievement Medal, the Army Good Conduct Medal, the National Defense Service Medal, the Global War on Terrorism Service Medal, the Korean Defense Service Medal, and the Non-Commissioned Officer Professional Development Ribbon. AR 48, 342, 356.

On September 14, 2010, Mr. Martinez reported concerning changes in his body to a medical professional at the Joint Defense Facility Pine Gap (JDFPG) Medical Clinic near Alice Springs in the Northern Territory of Australia.[2] AR 50. Specifically, Mr. Martinez reported "joint pains throughout [his] body" and "feeling like he has low energy for [the] past 3 weeks." *Id.* Notwithstanding his complaints, Mr. Martinez reported running four days a week and performing a "core body work-out" on other days. *Id.* The prescribed treatment plan recommended he "add vitamin[s]" to his diet and "[pay] attention to work out surfaces . . . to minimize joint trauma." *Id.* Mr. Martinez's next medical follow-up appointment occurred nearly a year later, in July 2011.

On June 12, 2011, Mr. Martinez failed to successfully complete the two-mile run portion of the APFT within the time allotted for his age group.[3] AR 93. Six weeks

---

[1] "AR __" is a citation to the Administrative Record (Bates Numbered 1 to 1,069) filed by the United States on February 23, 2024. ECF 9, 9-1.

[2] Pine Gap is a United States intelligence gathering facility jointly operated with Australia since 1970, strategically positioned to control and monitor United States satellites in the region.

[3] Three events comprised the APFT: push-ups, sit-ups, and a two-mile run which, by regulation, must be completed in that order on the same day. "Scoring on the APFT is based on gender, age category, number of repetitions performed of the push-up and sit-up, and run time." *See* https://perma.cc/5QL6-ZSG8 (last visited June 12, 2024). In 2022, the six-event Army Combat Fitness Test (ACFT) replaced the APFT as the Army's fitness test of record. *See* https://perma.cc/56EU-RTQ9 (last visited June 11, 2024).

later, on July 25, 2011, Mr. Martinez returned to the JDFPG Medical Clinic after suffering a back injury in early July 2011 during "combatives exercises."[4] AR 52. Mr. Martinez reported "[feeling] a pulled muscle" while "on [his] back [and] throwing [his] sparring partner off him." *Id.* After assessing Mr. Martinez, Physician Assistant (PA) Carl Nelson documented the medical condition as a "[b]ack injury" and issued a thirty-day temporary profile (DA Form 3349) with an expiration date of August 25, 2011.[5] AR 53. In reviewing Mr. Martinez's reported medical history, PA Nelson indicated no history of back pain in his medical notes and observed a "normal curvature" of the spine. *Id.* The treatment plan included a prescribed muscle relaxant and over-the-counter pain medication, alternating between heating pads and ice, and limited physical activity over the next thirty days (i.e., no running more than half a mile, no heavy lifting above fifty pounds). AR 52–53. Supervising physician Nora Klinker, MD generally concurred with PA Nelson's assessment and planned treatment, but nevertheless modified the "functional limitations and capabilities" as follows: "Run at patient's capacity – may substitute walk as required. No heavy lifting > 40lbs." AR 54. Dr. Klinker again examined Mr. Martinez on August 19, 2011, and prescribed ibuprofen and cold compresses to mitigate back pain. *See* AR 56. Notably, Dr. Klinker amended (but did not extend) Mr. Martinez's temporary physical profile–then scheduled to expire in six days. *Compare* AR 56, *with* AR 53–54.

Mr. Martinez again failed the two-mile run portion of the APFT on November 4, 2011. AR 96. Four weeks later, on November 30, 2011, he returned to the JDFPG Medical Clinic where PA Chris Perez prescribed anti-inflammatories to combat "lower/middle [b]ack [p]ain" and recommended seeking an x-ray or a computed tomography (CT) scan if the pain did not subside. AR 58. Relevant here, PA Perez found Mr. Martinez "qualified for service" based upon his physical profile and evaluation under the "P–U–L–H–E–S" factors.[6] *Id.* He found Mr. Martinez's

---

[4] Based in martial arts, combatives exercises train soldiers on hand-to-hand combat (i.e., an empty-handed struggle or with hand-held weapons). *See* https://perma.cc/HN34-W4LN (last visited June 12, 2024).

[5] As discussed *infra*, "[a] temporary profile is given if the condition is considered temporary, the correction or treatment of the condition is medically advisable, and correction usually will result in a higher physical capacity." Army Reg. 40–501 ¶ 7–4(c) (Aug. 23, 2010).

[6] The six physical profile factors comprising the P–U–L–H–E–S acronym include:

> (1) *P—Physical capacity or stamina.* This factor, general physical capacity, normally includes conditions of the heart; respiratory system; gastrointestinal system, genitourinary system; nervous system; allergic, endocrine, metabolic and nutritional diseases; diseases of the blood and blood forming tissues; dental conditions; diseases of the breast, and other organic defects and diseases that do not fall under other specific factors of the system.

across-the-board scores of "1" (on a four-point scale) defined him as "possess[ing] a high level of medical fitness." *Compare* AR 58, *with* Army Reg. 40–501 ¶ 7–3(d)(1) (Standards of Medical Fitness) (Aug. 23, 2010).

Mr. Martinez's command initiated his administrative separation under Army Regulation 635–200 ¶ 13–2(e) for "Unsatisfactory Performance" following his consecutive for-record APFT failures.[7] Army Reg. 635–200 ¶ 13–2(e) (Sept. 6, 2011)[8] ("Initiation of separation proceedings is required for Soldiers without medical limitations who have two consecutive failures of the Army physical fitness test per [Army Regulation] 350–1 . . . ."). *Compare* AR 384–85 (DD Form 214: Certificate of Release or Discharge from Active Duty (May 29, 2012)), *with* Army Reg. 635–200 ¶ 13–2(e). *See also* AR 391–92.[9, 10] Effective May 29, 2012, Mr. Martinez was discharged from the Army with an "Honorable" characterization of service, a "JHJ" separation code and accompanying narrative reason ("unsatisfactory performance"), and a reentry code of "3" (i.e., waiver required for reenlistment). AR 384. Mr. Martinez moved his family to Fort Gordon (Augusta, Georgia) (n/k/a Fort

---

(2) *U—Upper extremities*. This factor concerns the hands, arms, shoulder girdle, and upper spine (cervical, thoracic, and upper lumbar) in regard to strength, range of motion, and general efficiency.

(3) *L—Lower extremities*. This factor concerns the feet, legs, pelvic girdle, lower back musculature and lower spine (lower lumbar and sacral) in regard to strength, range of motion, and general efficiency.

(4) *H—Hearing and ears*. This factor concerns auditory acuity and disease and defects of the ear.

(5) *E—Eyes*. This factor concerns visual acuity and diseases and defects of the eye.

(6) S—*Psychiatric*. This factor concerns personality, emotional stability, and psychiatric diseases.

Army Reg. 40–501 ¶ 7–3(c).

[7] In addition to June 12 and November 4, 2011, the record suggests Mr. Martinez failed the APFT on two additional occasions between February and May 2012. AR 13, 14. Although immaterial to this decision, the record is unclear why Mr. Martinez completed additional for-record APFTs in 2012 after his successive failures in 2011. The Court assumes that Mr. Martinez's command afforded him additional opportunities to pass the fitness test prior to his May 2012 discharge.

[8] The Army published a new addition of Army Regulation 635–200 during the pendency of this case. For that reason, the Court has noted and referenced the regulation version that was in effect.

[9] Save his DD Form 214, the record presented does not memorialize the initiation and/or processing of Mr. Martinez's administrative separation. Because the issue presented here is limited to the basis for his involuntary separation, the missing documents (e.g., notification of separation memorandum, election of rights, chain of command recommendations) are immaterial.

[10] In the wake of Mr. Martinez's consecutive for-record APFT failures, he was rated "marginal" by his senior rater for the period from August 2, 2011 through January 31, 2012. *Compare* AR 96, *with* AR 80, 83, 86, 89. In the comment sections, Mr. Martinez's rater and senior rater principally cited to his inability to "set the example for Junior [Non-Commissioned Officers] in the Detachment" by not meeting APFT standards. AR 96.

Eisenhower) and accepted a military intelligence job as a civilian in Pensacola, Florida.

Shortly after his discharge, Mr. Martinez applied to the Department of Veteran Affairs (VA) for disability compensation and pension benefits. He was thereafter examined by a series of VA medical professionals between August and October 2013. In a rating decision dated October 30, 2013, the VA granted and denied service connection for a series of disability claims. Relevant here, the VA found: "Service connection for lumbar strain and lumbar scoliosis (claimed as mid and low back condition) is granted with an evaluation of 40 percent effective May 30, 2012." AR 62. The VA further credited Mr. Martinez's complaints of knee issues with ten percent service connection findings but denied service connection for his reported concerns about his hips, shins, and cervical spine.[11]

Eight years later, Mr. Martinez petitioned the ABCMR contending he should have been referred into DES and medically retired rather than separated for consecutive APFT failures. In support of his October 21, 2021 application, Mr. Martinez cited service-related injuries to his back and spine as the reasons for his consecutive APFT failures. Upon this premise, Mr. Martinez asserted his administrative separation under Army Regulation 635–200 ¶ 13-2(e) was improper as the regulation exempts soldiers suffering from medical limitations.

The ABCMR denied Mr. Martinez's application for administrative relief on January 19, 2023.[12] Prior to deciding the matter, the ABCMR solicited the views of the U.S. Army Physical Disability Agency (USAPDA) and the Army Review Boards Agency (ARBA) Medical Advisor.[13] Consistent with their opinions, the ABCMR highlighted three facts affirming Mr. Martinez's administrative separation and undermining his consideration for DES referral and medical retirement. First,

---

[11] The VA also denied service connection for the following disability claims: anxiety disorder to include difficulty sleeping, gastroesophageal reflux disease, bilateral hearing loss, high blood pressure, Methicillin-resistant Staphylococcus aureus, lung condition, and tension headaches.

[12] In addressing the substantive merits of Mr. Martinez's claim, the ABCMR excused the untimeliness of his application "in the interest of justice." AR 3 (citing 10 U.S.C. § 1552(b)).

[13] Headquartered at Fort Sam Houston (San Antonio, Texas), the USAPDA administers the DES. The ABCMR is one of a dozen components of the ARBA. *See* https://perma.cc/HUX7-VWVU (last visited June 11, 2024). ARBA's Medical Advisor stated in relevant part:

> There is no evidence the applicant had any medical condition which would have failed the medical retention standards of [C]hapter 3, [Army Regulation] 40–501 prior to his discharge; or was a significant contributing factor or cause for his four consecutive for-record APFT failures. Thus, there was no cause for referral to the [DES]. Furthermore, there is no evidence that any medical condition prevented the applicant from being able to reasonably perform the duties of his office, grade, rank, or rating prior to his discharge.

AR 14.

Mr. Martinez was only ever issued a thirty-day temporary profile (effective from July 25 to August 25, 2011), which was not in effect when he failed the June 12 and November 4, 2011 APFTs.  Second, Mr. Martinez was never found "unfit for duty" by a military or civilian medical provider at any time during his near decade of military service.  Third, on November 30, 2011–after failing the APFT's running event for a second consecutive time–Mr. Martinez underwent a medical examination wherein he was found "qualified for service" and not suffering from any "significant or disqualifying defects."[14]  AR 769.  Mr. Martinez filed this action on November 1, 2023, challenging the ABCMR's decision.

## DISCUSSION

### I. Legal Standard

Decisions issued by military corrections boards are reviewed under an arbitrary, capricious, unsupported by substantial evidence, or contrary to law standard.  *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998).  Moreover, where, as here, a civilian judge is called upon to evaluate the propriety of a service member's administrative involuntary discharge, military judgment is entitled to great deference.  *Doe v. United States*, 132 F.3d 1430, 1434 (Fed. Cir. 1997) ("When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great deference.") (citing *Orloff v. Willoughby*, 345 U.S. 83, 90 (1953); *Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1985)).  As pointedly stated by the United States Supreme Court over seventy years ago: "judges are not given the task of running the Army."  *Orloff*, 345 U.S. at 93.  This Court is limited to confirming duly authorized military officials adhered to applicable law and regulations in making and adequately supporting otherwise unreviewable personnel decisions.

### II. Administrative Separation

Army Regulation 635–200 ¶ 13–2(e) provides: "Initiation of separation proceedings is required for Soldiers without medical limitations who have two consecutive failures of the Army physical fitness test per [Army Regulation] 350–1 . . . ."  Army Reg. 635–200 ¶ 13–2(e).  Mr. Martinez maintains he was in fact suffering from qualifying medical limitations when he failed the APFT's running event,

---

[14] Although the government refers to this November 30, 2011 medical examination as Mr. Martinez's "exit physical," *see* ECF 11 at 10, the record presented is unclear regarding if or when he was last examined by a medical provider as part of the administrative separation process. *See, e.g.*, AR 979 (November 30, 2011 examination report: "the [A]rmy *might* 'kick him out.'") (emphasis added). The November 30, 2011 medical examination was likely required before the command could formally initiate the administrative separation process. Among other requirements (e.g., APFT scorecard, mental evaluation, counseling), the command typically has a soldier medically examined before notifying him or her of administrative separation under Army Regulation 635–200 ¶ 13–2(e).

precluding his administrative separation for consecutive failures. Instead, he argues that his physical condition qualified him for DES referral and a medical retirement.

In turn, Army Regulation 40–501 defines qualifying medical limitations. Chapter 3 (Medical Fitness Standards for Retention and Separation, Including Retirement) provides:

> This chapter gives the various medical conditions and physical defects which may render a Soldier unfit for further military service and which fall below the standards required . . . . These medical conditions and physical defects, individually or in combination, are those that—
>
> a. Significantly limit or interfere with the Soldier's performance of their duties.
>
> b. May compromise or aggravate the Soldier's health or well-being if they were to remain in the military Service. This may involve dependence on certain medications, appliances, severe dietary restrictions, or frequent special treatments, or a requirement for frequent clinical monitoring.
>
> c. May compromise the health or well-being of other Soldiers.
>
> d. May prejudice the best interests of the Government if the individual were to remain in the military Service.

Army Reg. 40–501 ¶ 3–1. In turn, Chapter 7 (Physical Profiling) codifies the above-referenced P–U–L–H–E–S serial system which, as discussed *infra*, numerically classifies a service members' medical, physical, and mental abilities to perform their assigned duties. Army Reg. 40–501 ¶ 7–3. As noted in Chapter 7, "[t]he conditions listed in [C]hapter 3 and the Soldier's functional limitations, rather than the numerical designator of the profile, will be the determining factors for MEB processing." *Id.* ¶ 7–3(d).

In this case, when Mr. Martinez failed the APFT's running event on June 12, and again on November 4, 2011, his medical records do not reflect that he suffered from any conditions or limitations outlined in Army Regulation 40–501.[15] Nor did his physical profile evidence the requisite functional limitation meriting a DES referral. As detailed above, nine months prior to his June 12, 2011 for-record APFT, Mr. Martinez reported general "joint pains" and "low energy" to the attendant registered nurse. AR 50. Notwithstanding these concerns, Mr. Martinez also noted

---

[15] Notably, Mr. Martinez received the same P–U–L–H–E–S scores upon enlistment in January 2002 and in July 2011. *Compare* AR 331, *with* AR 54. His November 2011 score actually improved. AR 58. In all instances, the providers further found Mr. Martinez "qualified for service." AR 54, 58, 331.

7

his continuing daily exercise routine (i.e., running, core workouts), and the prescribed treatment plan recommended merely adding vitamins to his diet and "pay[ing] attention to work out surfaces . . . to minimize joint trauma." *Id.* Medical personnel only recommended follow-up appointments if his condition did not improve. *Id.* To be clear, the medical record is devoid of any instruction that Mr. Martinez eliminate or limit physical activity and is likewise silent as to any injuries rising to the level of a temporary or permanent profile or requiring special medical attention before June 12, 2011.[16]  Consequently, there is no basis in fact or law to conclude that Mr. Martinez suffered a qualifying medical limitation to effectively void his June 12, 2011 for-record APFT.

It was not until six weeks *after* the June 12, 2011 for-record APFT fail that Mr. Martinez first reported his back injury and sought medical attention. Critically, the medical visit was precipitated by an intervening physical injury: an early July 2011 combatives exercise incident where Mr. Martinez "was on [his] back [] throwing [his] sparring partner off him." *See* AR 52; *see also* AR 204 (summary of medical appointments). As a result, medical providers issued a temporary physical profile for this back injury, limiting Mr. Martinez's physical activity for thirty days. AR 53–54 (DA Form 3349). Nevertheless, the supervising physician scored Mr. Martinez's physical profile as follows:

| P | U | L | H | E | S |
|---|---|---|---|---|---|
| 1 | 1 | 2 | 1 | 1 | 1 |

AR 54.[17]  The import of the scores "1" and "2" (and the absence of "3" or "4") are documented on the medical form.[18] In listing the ten functional activities all soldiers

---

[16] As documented in the VA Disability Benefits Questionnaire, on October 22, 2007, Mr. Martinez reported to a primary care clinic at Camp Humphreys (South Korea) complaining of "low back pain" or a "[b]ackache." AR 204. The attendant medical provider prescribed ibuprofen and instructed Mr. Martinez to stretch.

[17] Notwithstanding Mr. Martinez's complaint that the civilian physician in Australia was neither familiar with nor authorized to use the Army's profiling system, *see* ECF 10 at 15, it is not the Court's role to weigh in on who is (or is not) properly designated as a profiling officer. Regardless, the record presented in this case suggests otherwise. *See, e.g.*, AR 967 (during Mr. Martinez's May 3, 2012 medical examination, the attendant medical provider annotated: "*I cannot do profiles – see [a Physician Assistant] or Dr. Klinker*") (emphasis added).

[18] Consistent with the issuance of a temporary physical profile, "[a] physical profile designator of '2' under any or all factors indicates that an individual possesses some medical condition or physical defect that may require some activity limitations." Army Reg. 40–501 ¶ 7–3(d)(2). The numerical designator of "3" or "4" includes:

must be able to perform, the medical form notes: "If Soldier cannot perform any one of these tasks, then the PULHES must contain at least one '3' and Soldier must be referred to a MEB."  *Id.*  Dr. Klinker checked the "YES" boxes for each of the ten functional activities. *Id.* Addressing the section for APFT recommendations, Dr. Klinker checked the "NO" box for sit-ups and push-ups and checked the "YES" box for the two-mile run but noted: "run at patient's capacity – may substitute walk as required." *Id.* During an August 19, 2011 return visit, Dr. Klinker declined to extend the temporary profile.

When Mr. Martinez failed his next for-record APFT on November 4, 2011, his temporary profile had expired more than two months earlier.  By November 30, 2011, PA Perez scored Mr. Martinez's physical profile as follows:

| P | U | L | H | E | S |
|---|---|---|---|---|---|
| 1 | 1 | 1 | 1 | 1 | 1 |

AR 769.  He further assessed Mr. Martinez as "qualified for service" and noted no "significant or disqualifying defects."  *Id.*  As such, the record presented lacks documentary evidence demonstrating a qualifying medical limitation precluding administrative separation under Army Regulation 635–200 ¶ 13–2(e) for consecutive APFT failures.

Addressing Mr. Martinez's request for a DES referral and medical retirement, the ABCMR correctly explained: "DES compensates an individual only for service incurred condition(s) which have been determined to *disqualify him or her from further military service*."  AR 14 (emphasis added).  Indeed, under relevant Department of Defense Instructions, "medical authorities will refer eligible Service members into the DES who have . . . [o]ne or more medical conditions that may, singularly, collectively, or through combined effect, *prevent the Service member from reasonably performing the duties of their office, grade, rank, or rating* . . . ." DoDI 1332.18 § 5.2(a) (Nov. 10, 2022) (as amended) (emphasis added); *see also* Army Reg. 635–40 (Procedures for Disability Evaluation for Retention, Retirement, or Separation) (March 29, 2012).  Upon referral:

---

(3)  A profile containing one or more numerical designators of "3" signifies that the individual has one or more medical conditions or physical defects that may require significant limitations. The individual should receive assignments commensurate with his or her physical capability for military duty.

(4)  A profile serial containing one or more numerical designators of "4" indicates that the individual has one or more medical conditions or physical defects of such severity that performance of military duty must be drastically limited.

Army Reg. 40-501 ¶ 7-3(d)(3)–(4).

> A claim for disability is first considered by a Medical Evaluation Board ("MEB"), which reviews the individual's medical records to determine the nature of the disability. Then, if the disability is found to be permanent, the issue of disability retirement is referred to a Physical Evaluation Board ("PEB"), which provides a formal fitness and disability determination. If the PEB finds the service member unfit for duty and permanently disabled, it assigns a disability rating. If the rating is 30% or more, the PEB can recommend disability retirement. If the rating is less than 30%, the PEB can recommend discharge with the service member's having the option to receive a lump-sum disability severance payment.

*Barnick v. United States*, 591 F.3d 1372, 1375 (Fed. Cir. 2010) (citing 10 U.S.C. §§ 1201, 1203; *Walls v. United States*, 582 F.3d 1358, 1365–66 (Fed. Cir. 2009)).

Notwithstanding his thirty-day temporary profile, Mr. Martinez was neither diagnosed nor assessed as suffering from a medical condition or defect that rendered him "unfit for duty" or otherwise prevented him from reasonably performing his assigned duties.[19] In fact, the opposite is true. Mr. Martinez was affirmatively and repeatedly found qualified for service and not suffering from any debilitating medical conditions or defects.

Mr. Martinez's reliance on the VA's disability ratings is similarly misplaced as DES and VA evaluation standards are materially different. *See Keltner v. United States*, 165 Fed. Cl. 484, 492 (2023) ("[T]he VA is authorized to rate any service-connected condition while the military service is only authorized to rate or apply ratings to the conditions which make a service member unfit for continued military service and cause the premature termination of the member's military career.") (internal brackets omitted); *see also Kelly v. United States*, 69 F.4th 887, 889, 899 (Fed. Cir. 2023) ("The existence of a VA rating alone does not mean a service member is entitled to military disability retirement pay. . . . To be clear, VA regulations and VA decisions concerning disability are not binding on matters involving military disability retirement pay."). To that end, the effective date of Mr. Martinez's VA disability rating is unpersuasive. Where, as here, the VA receives a disability claim within one year of the veteran's separation, "the effective date can be as early as the day following separation." *See* https://perma.cc/7M5W-PY7T (last visited June 12, 2024).

---

[19] The Court notes that Mr. Martinez was examined by various medical professionals between January and May 2022, all of whom assessed and diagnosed health concerns unrelated to his previously reported back injury. *See, e.g.*, AR 975 ("[diarrhea; heartburn") (Jan. 3, 2012), 972 ("[gastrointestinal] upset, [sore throat], [c]ough.") (Feb. 26, 2012), 969–70 ("increasing anxiety," "sleep disturbance," and "shoulder pains") (Apr. 3, 2012), 967 ("[f]ever, vomiting[,] diarrhea, [and] hot [and] cold sweats") (May 3, 2012).

10

Lastly, as noted by the government, the Court lacks jurisdiction to entertain Mr. Martinez's claim that the ABCMR violated the Due Process Clause of the Fifth Amendment in failing to afford him a hearing. *See Mullenberg v. United States*, 857 F.2d 770, 773 (Fed. Cir. 1988) ("As to [plaintiff's] claim for damages for alleged violation of the [D]ue [P]rocess and [E]qual [P]rotection [C]lauses of the Constitution, it is firmly settled that these clauses do not obligate the United States to pay money damages. Therefore, these clauses of the [F]ifth [A]mendment do not trigger Tucker Act jurisdiction in the courts.") (citations omitted). It is also not lost on the Court that Mr. Martinez voluntarily waived his right to an in-person hearing before the ABCMR. *See, e.g.*, AR 30 ("Do you wish to appear at your own expense before the board in Washington[, DC]? . . . [Answer:] No. Consider my application based on records & evidence."). Accordingly, the Court finds no basis in law or fact to disturb the ABCMR's decision or remand this matter for further consideration or additional proceedings.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for judgment on the administrative record (ECF 10) is DENIED and defendant's cross-motion for judgment on the administrative record (ECF 11) is GRANTED. The Clerk of Court is directed to ENTER Judgment accordingly. No costs.

It is so **ORDERED**.

Armando O. Bonilla
Judge